UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:15-cv-2040-ORL-41-DAB

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
AMTRUST BANK,

        Plaintiff,

v.

FBC MORTGAGE, LLC,
a Florida limited liability company,

        Defendant.
_____/

## COMPLAINT

Plaintiff the Federal Deposit Insurance Corporation as Receiver for AmTrust Bank ("FDIC-R") sues Defendant FBC Mortgage, LLC ("FBC" or "Defendant"), and alleges as follows:

### INTRODUCTION

1. This action is brought against FBC for its breach of the November 16, 2005 Master Correspondent Loan Purchase Agreement and the March 2, 2007 Master Correspondent Loan Purchase Agreement (collectively, "Agreements"), as amended from time to time, pursuant to which FBC sold or transferred mortgage loans to AmTrust Bank, formerly known as Ohio Savings Bank ("AmTrust").

2. FBC breached its representations and warranties in the Agreements by providing AmTrust incomplete, inaccurate, false or misleading information regarding five mortgage loans

[443941/1]        1

sold or transferred to AmTrust. The FDIC-R files this action to recover the losses caused by FBC's breaches.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A) because suits brought by the FDIC-R are deemed to arise under the laws of the United States.

4. Venue exists in the Middle District of Florida under 28 U.S.C. § 1391. Defendant resides in this district and is a resident of the state of Florida. In addition, a substantial part of the events or omissions giving rise to the claim occurred in this district because the mortgage loans that are the subject of this action were funded to borrowers in this district. Moreover, the properties securing the mortgage loans that are the subject of this action are situated in this district.

## THE PARTIES

5. The Federal Deposit Insurance Corporation ("FDIC") is a corporation and instrumentality of the United State of America, established under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1835(a), and is authorized to be appointed as receiver for insured depository institutions that have failed. AmTrust was a federally chartered savings bank with its principal place of business in Cleveland, Ohio. AmTrust was in the business of, among other things, buying and/or funding mortgage loans. On December 4, 2009, the Office of Thrift Supervision closed AmTrust and appointed the FDIC as Receiver pursuant to 12 U.S.C. §§ 1464(d)(2)(A) and 1821(c)(5). The FDIC as Receiver is empowered to sue and complain in any court of law pursuant to 12 U.S.C. § 1819, and pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R, by operation of law, succeeded to all of AmTrust's claims. In this action, the FDIC-R

seeks to recover damages resulting from the conduct of the Defendant. The FDIC-R owns the subject claims and has standing to prosecute this action as AmTrust's receiver.

6. Defendant FBC is a Florida limited liability company with its principal place of business in Orlando, Florida. FBC is engaged in the business of, among other things, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property, and is doing business in this district.

## THE 2005 AGREEMENT

7. On November 16, 2005, AmTrust and FBC entered into a written contract entitled Master Correspondent Loan Purchase Agreement (hereinafter, "2005 Agreement"). The 2005 Agreement sets forth terms and conditions pursuant to which FBC would sell and/or submit and AmTrust would purchase and/or fund mortgage loans.

8. FBC made the following representations and warranties to AmTrust with respect to each loan submitted under the 2005 Agreement:

> VI. **REPRESENTATIONS AND WARRANTIES**
> 6.1 **Representations and Warranties; Mortgage loan.** [FBC] represents and warrants to [AmTrust], as to each Mortgage Loan to be purchased by [AmTrust] pursuant hereto (as of the Closing Date and the Purchase Date thereof unless otherwise stated), as follows:
>
> (a) The information contained in the Underwriting Package is complete, true and correct.[1]
> ...
> (h) The Mortgage Loan and The Mortgage Loan Documents comply with all FNMA and FHLMC underwriting standards

---

[1] The 2005 Agreement provides the following definition of "Underwriting Package": "'Underwriting Package' shall mean, with respect to a Mortgage Loan to be purchased under a particular Mortgage Loan Program, the items specified therefore in [AmTrust]'s underwriting standards for such Mortgage Loan Program, including without limitation, fully completed and signed loan applications, credit reports, deposit and employment verifications, evidence of income, appraisal, location survey, Federal Truth-in-Lending Act ("TIL") and Real Estate Settlement Procedures Act ("RESPA") disclosure documents (acknowledged by Mortgagor), [FBC]'s approval sheet, and all Loan Documents then available, if any."

and documentation requirements, except as otherwise expressly provided by Purchaser's specific Loan Programs.

...

(p) [FBC] has no knowledge of any circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that might be reasonably expected to cause FNMA, FHLMC or other institutional mortgage loan purchasers to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan or the Mortgaged Property.

9. Regarding FBC's repurchase and indemnification obligations, the 2005 Agreement provides:

**7.1 Repurchase.**

(a) Upon (i) failure by a Mortgagor to pay the full amount of any payment due pursuant to any Mortgage Loan within 30 days after the date when such payment was due two or more times within six (6) months after the first date after [AmTrust's] purchase thereof on which a regular monthly payment of principal and interest is due pursuant to such Mortgage Loan, [or] (ii) discovery by [AmTrust] of a breach of any of the representations and warranties contained in Article VI ... then, within sixty (60) days after the earlier of its discovery or its receipt of notice of any such event or occurrence, [FBC] shall repurchase said Mortgage Loan at a price equal to the higher of the purchase price or 100% of par, with adjustments for accrued interest, prepayments and any comparable items at the time of repurchase, plus attorney's fees, legal expenses, court costs or other expenses that may have been incurred by [AmTrust] in connection with the Mortgage Loan.

...

8.6 [FBC] shall **indemnify and hold harmless** [AmTrust], its shareholders, Directors, officers, agents, attorneys and employees, from and against any and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from,

(a) a breach of any representation or warranty of [FBC] contained in this Agreement;

(b) any act or omission of [FBC] or any of its partners, directors, members, shareholders, officers, agents or employees in originating or servicing any Mortgage Loan, including, without limitation, incomplete or erroneous loan documentation, fraud by [FBC] in the origination of the Mortgage Loan,

> improper escrow disbursements or misapplied payments or claims not covered by insurance, or violation of applicable law or regulation, ... [emphasis added]

10. A March 16, 2006 Addendum to the 2005 Agreement confirms the cumulative and discretionary nature of the repurchase and indemnification remedies available to AmTrust.

> In the event of a Material Error with respect to a Mortgage Loan, [FBC] shall, at [AmTrust's] sole and absolute discretion, (i) repurchase such Mortgage Loan and (ii) fully indemnify and hold [AmTrust] harmless from and against any and all liability, loss, cost or damage arising out of or relating to the Material Error.

11. Pursuant to the provisions contained in the 2005 Agreement, FBC sold and/or submitted for funding the Cortes, Hernandez and Montoya Loans, described *infra*, to AmTrust.

12. The 2005 Agreement was further amended from time to time; however, the substantive requirements regarding FBC's representations and warranties, as well as FBC's repurchase and indemnity obligations, remained consistent.

## THE 2007 AGREEMENT

13. On March 2, 2007, AmTrust and FBC entered into a written contract entitled Master Correspondent Loan Purchase Agreement ("MCLPA"), which incorporated by reference the AmTrust Seller's Guide hosted on AmTrust's proprietary Gemstone web-site (hereinafter, "2007 Agreement"). The 2007 Agreement sets forth terms and conditions pursuant to which FBC would sell and/or submit and AmTrust would purchase and/or fund mortgage loans.

14. FBC made the following representations and warranties to AmTrust with respect to each loan submitted under the 2007 Agreement:

**VII. REPRESENTATIONS AND WARRANTIES**

**7.1 Representations and Warranties; Mortgage loan.** [FBC] hereby incorporates by reference all representations and warranties set forth in the Seller's Guide and in the Agreement (collectively the "Reps") and represents and warrants to [AmTrust], as to each Mortgage Loan to be purchased by [AmTrust] pursuant hereto (as of the Closing Date and the Purchase Date thereof unless otherwise stated), that such Mortgage Loan complies in all respects with the Reps as then set forth in this Agreement

and the Seller's Guide at the time of the purchase of such Mortgage Loan by [AmTrust], which includes any and all additional representations and warranties added to the Seller's Guide after the effective date of this Agreement.

The Seller's Guide (issued Feb. 11, 2007) further stated:

**1.3 Representations and Warranties**

**1.3.2** The information contained in the underwriting package or otherwise used to underwrite and approve the mortgage loan is complete, true and correct.

...

**1.3.9** The Mortgage Loan and the Mortgage Loan Documents comply with all Fannie Mae and FREDDIE MAC underwriting standards and documentation requirements, except as otherwise expressly provided by AmTrust's specific Loan Programs as set forth on Gemstone.

...

**1.3.17** [FBC] has no knowledge of any circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that might be reasonably expected to cause Fannie Mae, FREDDIE MAC or other institutional mortgage loan [purchasers] to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan or the Mortgaged Property.

15. Regarding FBC's repurchase obligations, the 2007 Agreement provided as follows:

**8.1 Repurchase.**

(a) [FBC] agrees that upon written request [FBC] shall repurchase, at the Repurchase Price set forth in the Seller's Guide, any Mortgage Loan sold to [AmTrust] pursuant to this Agreement for any of the following reasons: ...

(iv) [AmTrust] determines that [FBC] failed to observe or perform, or breached, in any material respect any of the representations, warranties or agreements contained in this Agreement, the Seller's Guide, or Agency guidelines with respect to a particular Mortgage Loan.

The Seller's Guide (issued March 18, 2007) further stated:

**1.6 Repurchase or Purchase of Mortgage Loan**

**1.6.1** Upon (i) failure by a Mortgagor to pay the full amount of any payment due pursuant to any Mortgage Loan within 60 days after the date when such payment was due two or more times within six (6) months after the first date after AmTrust's purchase or

funding thereof on which a regular monthly payment of principal and interest is due pursuant to such Mortgage Loan, [or] (ii) discovery by AmTrust of a breach of any of the representations and warranties contained in the Agreement or this Seller's Guide... then, within thirty (30) days after the earlier of [FBC'] discovery or its receipt of notice from AmTrust of any such event or occurrence, [FBC] shall repurchase or purchase, as the case may be, said Mortgage Loan at a price equal to the higher of the purchase price or 100% of par, with adjustments for accrued interest, prepayments and any comparable items at the time of repurchase, plus fees, if any previously paid by AmTrust to [FBC] in connection with any Mortgage Loan that is a HELOC, plus attorney's fees, legal expenses, court costs or other expenses that may have been incurred by AmTrust in connection with the Mortgage Loan. In addition, [FBC] shall promptly repay to Lender any and all compensation therefore received by [FBC] from AmTrust with respect to the Mortgage Loan to be purchased.

**1.6.2** Upon a breach of any representation or warranty contained in the Agreement or in this Seller's Guide, at AmTrust's option, [FBC] shall repurchase or purchase, as the case may be, all of such Mortgage Loans at the times and prices as provide herein or as set forth elsewhere on Gemstone.

**1.6.3** In addition to all other amounts set forth herein the repurchase or purchase, as the case may be, price shall be at a price equal to ... prepayments and any comparable items at the time of repurchase, plus attorney's fees, legal expenses, court costs or other expenses that may have been a) the outstanding principal balance of the loan, plus b) accrued interest at the mortgage rate from the date to which interest was last paid, plus c), any amount in excess of the original principal balance paid to [FBC] by AmTrust, plus d) all other losses, costs, and expenses incurred by AmTrust in connection with the Mortgage Loan.

16. Regarding FBC's indemnification obligations, the 2007 Agreement provided as follows:

**9.4** (a) [FBC] hereby agrees to indemnify and hold harmless Purchaser, its successors and/or assigns, from any and all losses, liabilities, claims, damages, or costs of any nature, including without limitation attorneys' fees and costs, and actions suffered or incurred by [AmTrust] which arise out of, result from, or relate to: i) The breach by [FBC] of any covenant, condition, term, obligation, representation or warranty contained in this Agreement, the Seller's Guide, or in any written statement, certificate, or Mortgage Loan Document furnished by [FBC] pursuant to this Agreement or the Seller's Guide; or ii) any act or omission of [FBC] or any employee, vendor, service provider or agent of [FBC] which adversely affects any Mortgage Loan registered with and funded by [AmTrust] hereunder. This indemnification shall survive any termination or cancellation of this Agreement.

(b) Without limiting the foregoing paragraph, [FBC's] obligation to

> indemnify [AmTrust] under this Agreement shall include reimbursing [AmTrust] for the costs and expenses associated with [AmTrust's] efforts to require [FBC] to repurchase Mortgage Loans. ...

17. An April 10, 2007 Addendum to the 2007 Agreement confirms the cumulative and discretionary nature of the repurchase and indemnification remedies available to AmTrust.

> In the event of a Material Error with respect to a Mortgage Loan, [FBC] shall, at [AmTrust's] sole and absolute discretion, (i) repurchase such Mortgage Loan and (ii) fully indemnify and hold [AmTrust] harmless from and against any and all liability, loss, cost or damage arising out of or relating to the Material Error.

18. Pursuant to the provisions contained in the 2007 Agreement and its addendum, FBC sold and/or submitted for funding the Morataya Loan, described *infra*, to AmTrust.

19. The 2007 Agreement was further amended from time to time; however, the substantive requirements regarding FBC's representations and warranties, as well as FBC's repurchase and indemnity obligations, remained consistent.

## COUNT I
## BREACH OF CONTRACT
## (CORTES LOAN)

20. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

21. Pursuant to the 2005 Agreement, in or about April 2006, AmTrust purchased and/or funded a loan of $249,428 to borrower Jose Cortes, secured by property located in Orlando, Florida (the "Cortes Loan").

22. AmTrust purchased and/or funded the Cortes Loan, pursuant to the terms of the 2005 Agreement, for valuable consideration and in reliance upon the representations and warranties made by FBC in the 2005 Agreement.

23. In breach of the representations and warranties that FBC made to AmTrust in the 2005 Agreement, the information contained in the Cortes Loan Underwriting Package was

incomplete, untrue, and incorrect, by, among other things: misrepresenting the borrower's debt obligations and misrepresenting the borrower's occupancy of the property as a primary residence.

24. The Cortes Loan defaulted.

25. Starting on or about December 24, 2014, Plaintiff demanded that FBC perform its obligations under the 2005 Agreement with regard to the Cortes Loan, including but not limited to its indemnification obligation. FBC failed and refused to indemnify Plaintiff for losses relating to the Cortes Loan or otherwise perform under the 2005 Agreement.

26. FBC failed to perform its obligations under the 2005 Agreement with respect to the Cortes Loan.

27. AmTrust and the FDIC-R performed all of their obligations to FBC under the 2005 Agreement with respect to the Cortes Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of FBC.

28. As a result of FBC's breach of the 2005 Agreement, including, but not limited to, FBC's failure to perform its obligations under the 2005 Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 2005 Agreement.

## COUNT II
## BREACH OF CONTRACT
## (HERNANDEZ LOAN)

29. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

30. Pursuant to the 2005 Agreement, in or about May 2006, AmTrust purchased and/or funded a $199,742 loan to borrower Iris Hernandez, secured by property located in Kissimmee, Florida (the "Hernandez Loan").

31. AmTrust purchased and/or funded the Hernandez Loan, pursuant to the terms of the 2005 Agreement, for valuable consideration and in reliance upon the representations and warranties made by FBC in the 2005 Agreement.

32. In breach of the representations and warranties that FBC made to AmTrust in the 2005 Agreement, the information contained in the Hernandez Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: misrepresenting the borrower's debt obligations and misrepresenting the borrower's income.

33. The Hernandez Loan defaulted.

34. Starting on or about October 20, 2015, Plaintiff demanded that FBC perform its obligations under the 2005 Agreement with regard to the Hernandez Loan, including but not limited to its indemnification obligation. FBC failed and refused to indemnify Plaintiff for losses relating to the Hernandez Loan or otherwise perform under the 2005 Agreement.

35. FBC failed to perform its obligations under the 2005 Agreement with respect to the Hernandez Loan.

36. AmTrust and the FDIC-R performed all of their obligations to FBC under the 2005 Agreement with respect to the Hernandez Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of FBC.

37. As a result of FBC's breach of the 2005 Agreement, including, but not limited to, its failure to perform its obligations under the 2005 Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 2005 Agreement.

## COUNT III
## BREACH OF CONTRACT
## (MONTOYA LOANS)

38. Plaintiff realleges paragraphs 1 through 12, as if fully set forth herein.

39. Pursuant to the 2005 Agreement, in or about February 2006, AmTrust purchased and/or funded a first loan of $173,744 and a second loan of $43,436 to borrower Yolanda Montoya, secured by property located in Saint Cloud, Florida (the "Montoya Loans").

40. AmTrust purchased and/or funded the Montoya Loans, pursuant to the terms of the 2005 Agreement, for valuable consideration and in reliance upon the representations and warranties made by FBC in the 2005 Agreement.

41. In breach of the representations and warranties FBC made to AmTrust in the 2005 Agreement, the information contained in the Montoya Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things misrepresenting the borrower's occupancy of the property as a primary residence

42. The Montoya Loans defaulted.

43. Starting on or about September 23, 2014, Plaintiff demanded that FBC perform its obligations under the 2005 Agreement with regard to the Montoya Loans, including but not limited to its indemnification obligation. FBC failed and refused to indemnify Plaintiff for losses relating to the Montoya Loans or otherwise perform under the 2005 Agreement.

44. FBC failed to perform its obligations under the 2005 Agreement with respect to the Montoya Loans.

45. AmTrust and the FDIC-R performed all of their obligations to FBC under the 2005 Agreement with respect to the Montoya Loans, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of FBC.

46.     As a result of FBC's breach of the 2005 Agreement, including, but not limited to, FBC's failure to perform its obligations under the 2005 Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 2005 Agreement.

## COUNT IV
## BREACH OF CONTRACT
## (MORATAYA LOAN)

47.     Plaintiff realleges paragraphs 1 - 6 and 13 - 19, as if fully set forth herein.

48.     Pursuant to the 2007 Agreement, in or about May 2007, AmTrust purchased and/or funded a $209,000 loan to borrower Lizardo Morataya, secured by property located in Harmony, Florida (the "Morataya Loan").

49.     AmTrust purchased and/or funded the Morataya Loan, pursuant to the terms of the 2007 Agreement, for valuable consideration and in reliance upon the representations and warranties made by FBC in the 2007 Agreement.

50.     In breach of the representations and warranties that FBC made to AmTrust in the 2007 Agreement, the information contained in the Morataya Loan Underwriting Package was incomplete, untrue, and incorrect, by, among other things: (1) misrepresenting the borrower's occupancy of the property as a secondary residence and (2) misrepresenting the nature of the transaction in that the borrower purchased the property for investment purposes.

51.     The Morataya Loan defaulted.

52.     Starting on or about September 10, 2013, Plaintiff demanded that FBC perform its obligations under the 2007 Agreement with regard to the Morataya Loan, including but not limited to its indemnification obligation. FBC failed and refused to indemnify Plaintiff for losses relating to the Morataya Loan or otherwise perform under the 2007 Agreement.

53. FBC failed to perform its obligations under the 2007 Agreement with respect to the Morataya Loan.

54. AmTrust and the FDIC-R performed all of their obligations to FBC under the 2007 Agreement with respect to the Morataya Loan, except any obligations AmTrust and the FDIC-R have been prevented or excused from performing by the acts and breaches of FBC.

55. As a result of FBC's breach of the 2007 Agreement, including, but not limited to, its failure to perform its obligations under the 2007 Agreement, damages were suffered in an amount to be proven at trial. Thus, the FDIC-R is entitled to damages, plus interest, and attorneys' fees and costs under the 2007 Agreement.

WHEREFORE, Plaintiff, Federal Deposit Insurance Corporation as Receiver for AmTrust Bank respectfully requests that the Court enter judgment in its favor awarding it damages, costs, attorney's fees, and such other relief this Court deems proper against Defendant FBC Mortgage, LLC.

Dated: December 2, 2015

Respectfully submitted,

By: _____
Josh A. Migdal, Esq. (Fl. Bar No. 19136)
jmigdal@sgfcounsel.com
George T. Breur, Esq. (Fl. Bar No. 33283)
gbreur@sgfcounsel.com
Stolzenberg, Gelles, Flynn & Arango LLP
1401 Brickell Ave., Suite 825
Miami, FL 33131
Telephone: (305) 961-1450
Fax: (305) 423-3979
*Counsel for Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank*